```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
FRANCK DECAZE,                                                  :
                                                                :
                    Plaintiff,                                  :         **MEMORANDUM AND ORDER**
                                                                :
            -against-                                           :         01-CV-6543(DLI)(JMA)
                                                                :
D & D TRANSPORTATION and                                        :
CHARLES EPPS,                                                   :
                                                                :
                    Defendants.                                 :
----------------------------------------------------------------x
```

DORA L. IRIZARRY, United States District Judge:

Franck Decaze ("plaintiff" or "Decaze") brings this action against defendants, D&D Transportation ("D&D) and Charles Epps ("Epps") (collectively, "defendants"), seeking to recover economic losses beyond those included in §5102(a) of the New York Insurance Law, non-economic losses, and property damages.

Defendants move for summary judgment on the grounds that plaintiff failed to present credible admissible evidence of a "serious injury" as required by §5104(a) of the New York Insurance Law. Since the Court finds that plaintiff has not raised a triable issue of fact as to whether he sustained a serious injury in the February 28, 2000 collision, defendant's motion for summary judgment is granted.

**Factual Background**

On February 28, 2000, Decaze was involved in a car accident with a vehicle operated by Epps and owned by D&D. Decaze was taken by ambulance to the Kings County Hospital where he was treated and discharged later that day. (Def.'s Br. Ex. E at 19, Pl.'s Br. Ex. 2 at 1.)

Three days later, on March 3, 2000, Decaze went to see Dr. Romulus, a pediatrician who had previously treated him for an earlier car accident. (Def.'s Br. Ex. E at 20-21, Def.'s Br. Ex. G at 3.)

After his initial exam, Dr. Romulus noted that Decaze had a "limited range of motion at forward bending 40-45 degrees," and "tenderness on palpitation" of the lumbospine. (Pl.'s Br. Ex. 2 at 1.) Dr. Romulus diagnosed Decaze with a cervical sprain and a lumbosacral sprain. (Id.) He prescribed anti-inflammatory medicine, a muscle relaxant, and an "intensive course of physical therapy which consisted of hot pad, diathermy, massage, moist heat, strengthening exercise, myofacial release, tens, etc." (Id.)

At a follow up examination, Dr. Romulus noted that Decaze suffered from a headache, "tenderness and spasm on palpitation of the lumboparavertebral muscle," and tenderness of the paracervical muscle. (Id. at 2.) He therefore ordered Magnetic Resonance Images (MRIs) of Decaze's lumbar spine (performed in April 2000), and cervical spine (performed in May 2000). (Id.)

The MRIs revealed a very mild disc bulge, small disc herniations, a reversal of the normal cervical lordosis with a possible superimposed muscle spasm, and C2-5 fusion. (Pl.'s Br. Ex. 1 at 1, Docket Entry no. 32 at 1-2.) The MRI reports inconclusively characterized Decaze's conditions as degenerative, post traumatic or post surgical in nature. (Pl.'s Br. Ex. 1 at 1, Docket Entry no. 32 at 2.) Rather than analyze the MRIs, Dr. Romulus merely reiterates the contents of the MRI reports in his declaration. (Pl.'s Br. Ex. 4 at 1-2.)

Dr. Romulus states that he gave Decaze "therapy" for six months after the accident but never details the kind of therapy he administered. (Id. at 2.) In a letter dated December 26, 2001, he stated that Decaze's injuries were "permanent in nature." (Pl.'s Br. Ex. 2 at 2.) In his declaration, dated October 2004, he asserts that Decaze would "not be able to lift anything and certainly not drive a taxicab or do much movement for at least six months." (Pl.'s Br. Ex. 4 at 2.) However, Dr.

2

Romulus never specifies the basis for either conclusion. Dr. Romulus also referred Decaze to another doctor, whose name was not provided to the Court. (Def.'s Br. Ex. E at 28.) Decaze states that he was treated by this doctor for approximately two months, during which time he was prescribed Tylenol and ordered to exercise. (Id. at 29-30.)

Currently, Decaze takes Tylenol on an as-needed basis and is not undergoing any medical treatment. (Def.'s Br. Ex. E at 28-29, 34, Def.'s Br. Ex. I at 1-2.) However, he claims that because of the accident, he could not drive his taxi for four months and he can no longer lift things and must sleep on the ground. (Def.'s Br. Ex. E at 16-17, 32.)

In support of their motion for summary judgment, defendants submit the reports of Dr. Olson and Dr. Kulak. Dr. Olson, a physician duly licensed to practice in the state of New York reviewed Decaze's MRIs and the relevant Kings County Hospital records. (Def.'s Ex. H at 2.) On April 23, 2002, he conducted a physical examination of Decaze's central and peripheral nervous system, and cervical, dorsal and lumbosacral spine by having Decaze perform several motion tests. (Id. at 2-4.) Dr. Olson noted that during the range of motion tests, "the patient adopts a virtual poker spine type of presentation with marked voluntary restriction of motion…which was repudiated by the confirmatory straight leg raising signs, which were normally performed at 90 degrees bilaterally without complaint. Such findings are inconsistent with organicity and are indicative of a marked conscious dramatization of the subjective complaints." (Id. at 3.) Based upon his observations during the physical exam and his review of the MRIs, Dr. Olson concluded that Decaze's back condition was indicative of a preexisting degenerative condition. (Id.)

Dr. Kulak, a New York State licensed Orthopedic Surgeon, corroborated Dr. Olson's conclusions. (Def.'s Br. Ex. I at 1.) He had Decaze perform several motion tests on April, 25, 2002

3

and observed that Decaze's cervical spine had a "full range of motion" (Id. at 1, 3-4.)

## Discussion

**Standard for Summary Judgment**

Summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must view all facts in the light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S. Ct. 1598, 26 L. Ed. 142 (1970). In drawing inferences in favor of the non-moving party, "the court is not entitled to weigh the evidence." St. Pierre v. Dyer, 208 F.3d 394, 404 (2d Cir. 2000). Nevertheless, "[c]onclusory allegations, conjecture, and speculation…are insufficient to create a genuine issue of fact," Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998). The court must deny summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248.

In a motion for summary judgment under New York's No-Fault law, a defendant bears the initial burden of making a prima facie showing that the plaintiff did not suffer a "serious injury." If met by the defendant, the burden then shifts to the plaintiff. Carter v. Geldis, No. 00 CV 7236, 2002 WL 1159904, at *5 (E.D.N.Y. Apr. 23, 2002); Grossman v Wright, 268 A.D.2d 79, 83, 707 N.Y.S.2d 233 (2nd Dept. 2000); see also Bluiewicz v. Comeau, 212 A.D.2d 657, 657, 622 N.Y.S.2d 773 (2nd Dept. 1995) (summary judgment denied because defendants failed to meet their initial burden of establishing that injury was not serious).

4

**Serious Injury Analysis**

New York's No-Fault law provides that in an action "for personal injuries arising out of negligence in the use or operation of a motor vehicle in this state, there shall be no right of recovery for non-economic loss, except in the case of a serious injury." N.Y. Ins. Law §5104. The No-Fault Law defines the term "serious injury" as:

> a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment."

N.Y. Ins. Law §5102(d). Plaintiff bears the burden, as a threshold matter, of establishing a prima facie case that he sustained a serious injury within the meaning of the statute. Licari v. Elliot, 57 N.Y.2d 230, 240, 441 N.E.2d 1088, 45 N.Y.S.2d 570 (1982).

The New York Court of Appeals has consistently recognized that the legislative intent underlying the enactment of the No-Fault Law was to "weed out frivolous claims and limit recovery to significant injuries" by requiring "objective proof of a plaintiff's injury in order to satisfy the statutory serious injury threshold. Toure v. Avis Rent a Car Systems, Inc., 98 N.Y.2d 345, 350, 774 N.E.2d 1197, 746 N.Y.S.2d 865 (2002) (quoting Dufel v. Green, 84 N.Y.2d 795, 798, 647 N.E.2d 105, 622 N.Y.S.2d 900 (1995)). While the No-Fault Law clearly allows plaintiffs to recover non-economic losses in appropriate cases, the court must "first determine whether or not a prima facie case of serious injury has been established which would permit a plaintiff to maintain a common-law cause of action in tort." Licari, 57 N.Y.2d at 237.

Defendants have met their burden by providing admissible affirmations from two doctors that demonstrate that Decaze's injuries are not serious within the meaning of §5104 of the New York's No-Fault Law. Thus, the burden shifts to Decaze to make a prima facie showing that his injuries are serious.

Decaze has failed to specify the type of serious injury he allegedly suffered. The Court has determined that the only colorable claims are 1) "permanent consequential limitation of use of a body organ or member;" 2) "significant limitation of use of a body function or system;" or 3) "medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment." N.Y. Ins. Law §5102(d).

To show a "permanent consequential limitation of use of a body organ" Decaze must establish the permanence of his injuries. Subjective complaints must be verified by objective findings based on a recent medical examination. Williams v. Elzy, No. 00 Civ. 5382, 2003 WL 22208349, at *6 (S.D.N.Y. Sept. 23, 2003); see also Bidetto v. Williams, 276 A.D.2d 516, 517, 713 N.Y.S.2d 764 (2nd Dept. 2000) (treating physicians testimony had no probative value when it was based on an examination over two years old); Kauderer v. Penta, 261 A.D.2d 365, 366, 689 N.Y.S.2d 190 (2nd Dept. 1999) (affidavit based on an examination performed almost three years earlier failed to demonstrate a triable issue of fact); Thomas v. Roach, 246 A.D.2d 591, 591, 667 N.Y.S.2d 296 (2nd Dept. 1998) (affidavit based on an examination which that took place over two years earlier was insufficient to defeat a motion for summary judgment).

Dr. Romulus' declaration dated October 2004 is based on medical examinations performed

in the year 2000. Thus, his declaration is not based on a "recent medical examination" of the plaintiff. Therefore, Dr. Romulus' four-year-old examination is insufficient to overcome a motion for summary judgment. Furthermore, the most recent examinations of Decaze reveal that he is fully capable of using all of his body organs and members. Since Decaze has submitted nothing to rebut this finding, he cannot claim a "permanent consequential limitation of use of a body organ."

In contrast to the "permanent consequential limitation of use of a body organ," "significant limitation of use of a body function or system" need not be permanent; however it must be more than a minor, mild, or slight limitation of use. Grossman, 268 A.D.2d at 83; Licari, 57 N.Y.2d at 236. MRI reports showing bulging or herniated discs alone are not sufficient to establish that the plaintiff suffered a serious injury. Pierre v. Nanton, 279 A.D.2d 621, 621, 719 N.Y.S.2d 706 (2nd Dept. 2001). The plaintiff must complement those reports with quantitative medical testimony that specifies the degree to which his range of motion has decreased, or with a qualitative medical assessment of his condition, that has an objective basis and that compares the plaintiff's limitations to the normal function, purpose and use of the affected body organ, member, function or system. Toure, 98 N.Y.2d at 350-351. A plaintiff's subjective complaints alone are not enough. Id. at 350. Nor are conclusory assertions based on those subjective complaints and tailored to meet statutory requirements. Grossman, 268 A.D.2d at 83; Lopez v. Senatore, 65 N.Y.2d 1017, 1019, 484 N.E.2d 130, 494 N.Y.S.2d 101 (1985); Ried v. Spivack, 160 A.D.2d 728, 729, 555 N.Y.S.2d 617 (1990).

Decaze has provided the Court with MRI reports indicating small herniated discs in the cervical spine in support of the proposition that his injuries are serious. However, Dr. Romulus neither analyzes these MRIs, nor connects them to the instant car accident. In fact, the most objective measurement Dr. Romulus makes consists of his observation three days after the accident

7

that Decaze suffered from a "limited range of motion at forward bending 40-45 degrees." This observation fails to adequately quantify the degree to which Decaze's range of motion in his back has decreased. It does not compare Decaze's condition to any standard for the normal back function of a man of Decaze's age. Nor does Dr. Romulus provide a qualitative measure of Decaze's condition whatsoever. However, based on his observations three days after the accident, Dr. Romulus concludes in his affirmation four years later that, Decaze "was not able to lift anything and certainly not drive a taxicab for at least six months and possibly longer." Rather than give objective medical analysis explaining why that might be the case, Dr. Romulus simply reiterates Decaze's subjective complaints. Therefore, based solely on the evidence presented, no reasonable jury could find that Decaze's injuries rise to the requisite level of severity.

For the same reasons Decaze's claim of significant limitation of use of a body function or system" cannot succeed, his claim of a "medically determined injury or impairment of a non-permanent nature" fails as well: Dr. Romulus does not support any of his assertions with objective medical evidence nor does he make the necessary causal connections between the scant medical evidence provided and Decaze's back condition. Thus, the statements he makes in his affirmation can only be regarded as conclusory and tailored to meet statutory requirements.

**Conclusion**

For the reasons set forth above, the court grants the defendant's motion for summary judgment. Plaintiff's complaint is, therefore, dismissed.

SO ORDERED.

Dated: Brooklyn, New York
September 30, 2005

/s/
Dora L. Irizarry
United States District Judge